**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Melie D. Southerland, ) | No. CV-10-1882-PHX-GMS |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Patrick R. Donahoe, Postmaster General, ) | |
| United States Postal Service, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Pending before the Court are Plaintiff's Motion for Preliminary Injunction (Doc. 15), and Defendant's Motion to Dismiss claims in Plaintiff's Complaint that are brought pursuant to the Americans with Disabilities Act and the Freedom of Information Act (Doc. 11). For the reasons provided below, the Court denies Plaintiff's Motion for Preliminary Injunction and grants Defendant's Motion to Dismiss.

**BACKGROUND**

Plaintiff, Melie D. Southerland, is a postal clerk at a mail processing facility known as the West Valley Logistics and Distribution Center ("WVLDC") in Phoenix, Arizona. Since August 1995, Plaintiff has suffered from serious mental impairment, including anxiety, panic disorder, and agoraphobia. Plaintiff alleges that Defendant discriminated against him based upon his partial and permanent mental disability, gender, and for requesting reasonable accommodation under the Rehabilitation Act. In addition, he claims Defendant retaliated against him for his prior EEO activity. Plaintiff alleges that his agoraphobic condition made

conventional traveling very difficult, thereby requiring him to commute primarily via bicycle. Therefore, Plaintiff requested as an accommodation that he not be assigned to a facility which was located farther than the WVLDC and would require him to bike approximately 50 miles per day. He alleges that he was denied this reasonable accommodation and was transferred to the other facility even though there were eight temporary female employees who could have been transferred in his place. Moreover, he alleges that Defendant actively tried to terminate him in retaliation for his accommodation requests by altering Plaintiff's attendance data and Family Medical Leave requests in order to accelerate disciplinary actions against him. Plaintiff further alleges that Defendant failed to provide him a confidential environment in which to discuss his mental impairment with the District Reasonable Accommodation Committee (DRAC).

Plaintiff filed his Complaint in the instant action on September 2, 2010, alleging violations of the (1) Family Medical Leave Act ("FMLA"), (2) Rehabilitation Act, (3) Americans with Disabilities Act ("ADA"), and (4) Freedom of Information Act ("FOIA"). Defendant moves to dismiss Plaintiff's claims pursuant to the ADA and FOIA. Plaintiff seeks a preliminary injunction, requesting substitute supervision during the processing of this suit.

## DISCUSSION

**I.     Plaintiff's Motion for Preliminary Injunction**

    **A.     Legal Standard**

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 129 S.Ct. 365, 376 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 374. All four factors must be satisfied for the Court to grant a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). Defendant asserts that Plaintiff is unable to establish a likelihood of success on the merits of his claims or to demonstrate irreparable harm, and therefore, the Court should deny the preliminary injunction. (Doc. 18).

At the preliminary injunction stage, Plaintiff has the burden of proof. *Preminger v. Principi*, 422 F.3d 815, 823 n.5 (9th Cir. 2005). In addition, because the function of a preliminary injunction is to preserve status quo pending determination of the merits, there is heightened scrutiny where a movant seeks to alter, as is the case here, rather than maintain the status quo. *Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) (holding that mandatory, as opposed to prohibitory, injunctions are subject to heightened scrutiny).

**B.     Analysis**

In his motion, Plaintiff seeks an injunction directing Defendant to substitute supervision over him to someone other than his current immediate supervisor, Larry Areingdale, during the processing of this case. Plaintiff asserts that "[t]he reasons for the request are based upon evidence that, while working as a subordinate, the plaintiff was exposed to constant less than professional behavior by his supervisor." (Doc. 15 at 2). Plaintiff claims that such relief is appropriate because "a fundamental element of plaintiff's claim is that the defendant adversely altered attendance data of the plaintiff in order to accelerate disciplinary actions against him," and therefore, "the threat of personal data manipulation by this supervisor is significant." (*Id.* at 2–3). He further asserts a desire for a "more productive and less hostile working environment." (*Id.* at 7).

As stated, to obtain a preliminary injunction, Plaintiff must show that he is likely to suffer irreparable harm absent an injunction. *Winter*, 129 S.Ct. at 374. To meet the "irreparable harm" requirement, Plaintiff must do more than simply allege imminent harm; he must demonstrate it. *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). This requires Plaintiff to demonstrate by specific facts that there is a credible threat of immediate and irreparable harm. *See* FED. R. CIV. P. 65(b). Mere "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine*, 844 F.2d at 674.

Plaintiff's motion for injunctive relief does not set forth any specific facts indicating that he is subject to a threat of irreparable harm by working under the supervision of Areingdale during the pendency of this case. As an initial matter, Plaintiff filed his motion

for preliminary injunction on January 25, 2011, nearly five months after filing his initial complaint. The fact that evidence provided by Plaintiff himself indicates that he has been working under the immediate supervision of Areingdale at least since April 2004 (Doc. 15, Ex. C) mitigates the likelihood of imminent harm. Furthermore, Plaintiff's filings are unavailing. The letter, dated February 2002, from Dr. Shaw discusses Plaintiff's anxiety as a result of problems with the post office management. (*Id.* at Ex. A). In addition to being far too dated to demonstrate imminent harm, it remains unclear whether the supervisor that Plaintiff complained of to Dr. Shaw in 2002 was Mr. Areingdale or someone else. Similarly, documentation related to Plaintiff's 2004 EEO activity involving Areingdale, the June 18, 2008 Notice of 7-day Suspension which Areingdale filed against Plaintiff as a result of his recurring absences, and the 2008 grievance forms filed with the AFL-CIO, while perhaps relevant to Plaintiff's case, fail to demonstrate how injunctive relief is necessary to protect his interests from irreparable harm. (*Id.* at Ex. B, C, D). In addition, while Plaintiff submits records of his attendance data and FMLA request to demonstrate that Areingdale purposefully tampered with or misrepresented this information, thus posing a significant threat of continued data manipulation, the documents provided by Plaintiff, without more, fail to provide specific evidence of past tampering sufficient to demonstrate a credible threat of imminent and irreparable harm. (Doc. 15, Ex. E, F). Plaintiff's conclusory allegations that Areingdale disregards Title VII and is "neither trustworthy, nor capable of integrity, and has within him malicious intent against the plaintiff" also do not satisfy the heightened standard for affirmative relief. (Doc. 15 at 2–3). Consequently, Plaintiff has not made a clear showing of the likelihood of irreparable injury, and that alone is fatal to his motion.

**II.     Defendant's Motion to Dismiss**

Defendant moves to dismiss Plaintiff's ADA and FOIA claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(c). (Doc. 11). In response, Plaintiff concedes to withdrawing both claims. With respect to his ADA claim, Plaintiff states "[i]t was not the intent to proceed under the Americans with Disabilities Act, but rather . . . was meant only as a reference to the standards that are utilized by both the Rehabilitation Act and the ADA."

- 4 -

(Doc. 14 at 2). Similarly, with regard to his FOIA claim, Plaintiff states that "[a]s the elements cited in this pleading can be resolved through Discovery, this count, without relinquishing future discovery requests, is being withdrawn." (*Id*.). Accordingly, these claims, to the extent they were raised in the Complaint, are dismissed. In addition, without prompting from the Defendant, Plaintiff himself states that "[i]t was the plaintiff's intent not to file a Family Medical Leave Act complaint with the US District Court, but rather was an issue of alleged pretext as it related to the defendant's affirmatives defenses." (Doc. 14 at 1). As a result, the Court also dismisses Plaintiff's FMLA claim.

Finally, in his response, Plaintiff asserts his intent to amend his pleading in order to add a claim for hostile work environment. (Doc. 14 at 2). He further asserts that it is the "intent of the plaintiff to revise the certain counts and pleadings" and "asks that the court accept the amendments provided in this document." (*Id*. at 3). Nevertheless, Plaintiff also acknowledges that the Court entered a Case Management Order (Doc. 10) on December 17, 2010, setting forth a number of deadlines, including the deadline for amending pleadings. Plaintiff was given 60 days to file an amended complaint. Applied here, Plaintiff had until February 15, 2011, to file an amended complaint, but failed to do so. Where a scheduling order is in place, Rule 16(b) controls. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992). Rule 16(b)(4) states that a "schedule may be modified only for good cause and with the judge's consent." *See also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id.* The focus of the Court's inquiry is on Plaintiff's reasons for seeking modification. *Id.* If Plaintiff has not been diligent, the inquiry ends and the motion is denied. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).

Plaintiff has failed to assert that good cause exists to modify the deadlines set by the

Court. Plaintiff's demanding work schedule does not constitute good cause for failing to comply with the Court's deadlines. While the Court remains cognizant that Plaintiff is pro se, the Ninth Circuit has made clear that "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987); *see also Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995). Accordingly, Plaintiff has missed his opportunity to amend his pleadings to add a claim for hostile work environment.

## CONCLUSION

Plaintiff's ADA, FOIA, and FMLA claims are dismissed based on his own withdrawal. Plaintiff's only remaining claims are for discrimination, retaliation, and failure to provide reasonable accommodation, all pursuant to the Rehabilitation Act.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Preliminary Injunction (Doc. 15) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss (Doc. 11) is **GRANTED**. Plaintiff's claims pursuant to the FMLA, ADA, and FOIA are dismissed with prejudice.

Dated this 23rd day of May, 2011.

_____
G. Murray Snow
United States District Judge